UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE TANOURY, JR.,

                                    Plaintiff,

               vs

TIMOTHY JULIAN, Individually, and in his
Official Capacity as Mayor of the City of Utica;                    6:05-CV-227
TIMOTHY DOYLE, Individually, and as Director
of the Utica Urban Renewal Agency; JOHN
DANIELS, Individually and as Mayor's Assistant
for the City of Utica; JOSEPH AMEROSA,
Individually, and as Utica Police Officer; JOHN
and JANE DOE, A Fictitious Name Intended to
Indicate other Persons Unknown at this time;
URBAN RENEWAL AGENCY; and CITY OF UTICA,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

LEON R. KOZIOL, ESQ.
Attorney for Plaintiff
1518 Genesee Street
Utica, New York 13502

PETER M. HOBAICA, ESQ.
Attorney for Defendants Timothy Julian,
   John Daniels, Joseph Amerosa, and City of Utica
2045 Genesee Street
Utica, New York 13501

GOLDGERG SEGALLA, LLP                          WILLIAM J. GREAGAN, ESQ.
Attorneys for Defendants Timothy Doyle
   and Urban Renewal Agency
Suite 300
8 Southwoods Boulevard
Albany, New York 12211-2526

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Lawrence Tanoury, Jr. ("Tanoury" or "plaintiff") brings this action against Utica Mayor Timothy Julian ("Mayor"), John Daniels ("Daniels"), Joseph Amerosa ("Amerosa"), and the City of Utica (collectively "City defendants"); as well as against Timothy Doyle ("Doyle") and the Urban Renewal Agency ("URA") (collectively "URA defendants") under 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments of the United States Constitution, and the common law of New York.  Specifically, Tanoury asserts claims for malicious prosecution and false arrest under the Fourteenth Amendment and New York State Constitution; denial of due process under the Fourteenth Amendment; First Amendment retaliation; conspiracy to violate civil rights[1]; defamation; battery; and intentional infliction of emotional distress.

Defendants moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56(c).  Plaintiff opposes.  Oral argument was heard in Utica, New York on June 26, 2007.  Decision was reserved.

## II. FACTS

The following facts are undisputed unless otherwise noted.

In April 2004, defendant Doyle, Director of the Utica Urban Renewal Agency, hired Tanoury as Director of Marketing for the URA as an at-will employee.  Defendant Mayor Julian is Chairman of the URA and recommended Tanoury's employment.

---

[1] Tanoury does not explicitly refer to 42 U.S.C. § 1985 in the complaint, however, he sufficiently asserts a claim for conspiracy to violate civil rights such that it can be analyzed under § 1985.

On June 16, 2004, Tanoury made two pertinent statements at a local eatery.  First, when introducing his girlfriend to Mayor Julian's secretary, he referred to the secretary as the Mayor's mistress.  Second, he disclosed city pay raises discussed at a Board of Estimate and Apportionment meeting to a media reporter.  Tanoury alleges that the Mayor's secretary informed the Mayor that he introduced her as the Mayor's mistress.

The next day, Utica's daily newspaper, the Observer-Dispatch, published an article discussing the pay raises.  Shortly thereafter, the Mayor expressed his anger to plaintiff over his pay raise disclosure.

On June 18, 2004, Doyle, accompanied by the Mayor's chief of staff, defendant Daniels, informed plaintiff his employment services were no longer needed.  Doyle never offered a reason for the dismissal.  However, plaintiff claims that after repeated inquires as to whether his job performance caused the termination, Doyle pointed to the Mayor's office window and stated "it never does, does it?"  (Pl.'s Aff. ¶ 18.)  Nevertheless, Doyle claims that Tanoury failed to adhere to the chain of command and directions, and that he made the termination decision and informed the Mayor thereof, on June 16, 2004.

Upon notice of termination, Daniels escorted Tanoury to his car.[2]   Daniels and Doyle claim that during this time Tanoury stated he would get even with the Mayor and might "blow his brains out in the Mayor's office."  (Doyle Dep. at 47, ¶ 5; Daniels Dep. at 47, ¶¶ 3-7.)  In response, Tanoury claims the defendants concocted these statements and took his venting out of context.

_____

[2] Doyle also claims he escorted Tanoury to his car, (Doyle Dep. at 45, ¶ 17); however, Tanoury claims Doyle did not escort him to his car, (Tanoury Dep. at 26, ¶ 22).

Approximately two hours later, plaintiff used his city Fuelman credit card to purchase $15.06 in gasoline.[3]  There is no written policy pertaining to gas card use.

On the same day, Daniels informed the Mayor of the circumstances and events surrounding Tanoury's termination.  At the Mayor's suggestion, Daniels reported the incident to the Utica Police Department, setting forth the threatening statements Tanoury allegedly made.  The next day, Tanoury called the Mayor at his home to discuss his termination but the Mayor refused to discuss the matter.

On June 20, 2004, the Mayor and his wife saw plaintiff drive slowly past their home several times.  The Mayor's home is located on a fairly busy street near a traffic light.  The Mayor informed the Utica Police Department of plaintiff's activities and it dispatched defendant Officer Joseph Amerosa to maintain surveillance in the area.  Once at the Mayor's residence, Amerosa informed the Mayor that he would be conducting surveillance nearby.  Later that day, Amerosa observed plaintiff drive slowly past the Mayor's home.  Amerosa stopped and arrested plaintiff for harassment, during which time he placed plaintiff in handcuffs and leg restraints.  While at the police station, plaintiff disclosed that he still possessed his city gas card, prompting Investigator Steven White ("White") to conduct a criminal investigation of his gas card use.

The next day, Doyle gave a police statement pertaining to the harassment charge, in which he recounted Tanoury's alleged threatening statement.  Tanoury was formally charged with harassment in the first degree.

---

[3]  City employees are given "Fuelman" debit cards to pay for gas used in the course of their duties.

On June 23, 2004, White concluded his criminal investigation and charged Tanoury with grand larceny in the fourth degree.  On that same day, Daniels signed a statement supporting the felony complaint.

Months later, Assistant Utica Corporation Counsel, John Dillon, sent a letter to plaintiff offering a name-clearing hearing.  Plaintiff called the relevant city law office to confirm a time and place, however, nothing transpired.

During the criminal harassment proceedings, Tanoury moved twice to dismiss the charges; however the Utica city court judge denied both motions.  Subsequently, on November 4, 2004, a criminal jury acquitted Tanoury of the harassment charge.  Shortly thereafter, the Mayor made public statements via newspaper articles and a radio program confirming that he would press on with the grand larceny charges.

On December 20, 2004, the Oneida County District Attorney dismissed the grand larceny charges, which had been reduced to petit larceny, in the interest of justice.

Before the acquittal and dismissal of the criminal proceedings, the Utica City Court issued a broad protection order that prevented Tanoury from entering City Hall or going near the Mayor's home.

Plaintiff filed this action on February 23, 2005.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505,

2509 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); Richardson, 180 F .3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983).  Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-3 (1986); Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct at 1356.  At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Anderson, 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B. Malicious Prosecution Claim[4]

At the outset, it should be noted that plaintiff's malicious prosecution claim relates to both the harassment and grand larceny charges.  Defendants move for summary judgment on plaintiff's malicious prosecution claim on the ground that none of the defendants initiated the grand larceny prosecution and that only Amerosa might be said to have initiated the

---

[4]  The legal standards for recovery on a malicious prosecution claim under New York law are the same as the federal standards.  Therefore, even though the ensuing discussion is in terms of federal law, it applies equally to plaintiff's malicious prosecution claim under New York law.

harassment prosecution.  In any event, City defendants argue that Amerosa had probable cause to arrest and prosecute plaintiff, and is therefore absolved from any liability.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  Section 1983 provides a private right of action to citizens who have been deprived of their Fourth Amendment rights by individuals acting under the color of state authority.  See 42 U.S.C.A. § 1983 (2003). Therefore, a person may bring a malicious prosecution claim under § 1983 if their right to be secure in their person from unreasonable seizures has been violated by a state actor.  See id.

To prove a claim for malicious prosecution, a plaintiff must show:  (1) initiation or continuation of criminal proceedings by the defendant; (2) the prosecution was initiated without probable cause; (3) the proceeding was commenced with malice, and (4) the proceedings terminated in the plaintiff's favor.  Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Martin v. City of Albany, 42 N.Y.2d 13, 16 (1977).[5]  A plaintiff must also show that he suffered "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights."  Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  The requirements of attending criminal proceedings and obeying the conditions of bail suffice as post-arraignment liberty restraints.  See Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997).

---

[5] The elements of a federal malicious prosecution claim are the same as the elements of a state malicious prosecution claim.  See Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39 (2d Cir. 1995).

With respect to the first element of a malicious prosecution claim--the requirement that there is an initiation or continuation of a criminal prosecution by the defendant--"'[t]he mere reporting of an incident to police and giving testimony [is] insufficient; it must be shown that the defendant played an active role in the prosecution, such as giving advice and encouragement, or importuning the authorities to act.'" Rohman, 215 F.3d at 217 (quoting DeFilippo v. County of Nassau, 183 A.D.2d 695, 696 (N.Y. App. Div. 2d Dep't 1992) (internal quotation marks omitted)). "[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest." Brown v. Sears Roebuck and Co., 297 A.D.2d 205, 210 (N.Y. App. Div. 1st Dep't 2002) (citing Viza v. Town of Greece, 94 A.D.2d 965, 966 (N.Y. App. Div. 4th Dep't 1983)).

The second element of a malicious prosecution claim mandates that the prosecution be initiated in the absence of probable cause. See Ricciuti, 124 F.3d at 130. Put another way, probable cause is a complete defense. See id. Probable cause exists when the facts possessed by the officer are sufficient to warrant a prudent person in believing a suspect is committing or has committed an offense. Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975); O'Neil v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993); Brown, 297 A.D.2d at 210. In evaluating these matters, only those facts available at the time of the [initiation] are considered. See Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

### 1. **Grand Larceny Prosecution**

Plaintiff has produced no evidence that Amerosa or Doyle initiated or continued the grand larceny prosecution in this case. Plaintiff has shown, however, that the Mayor publicly

stated he would press on with the grand larceny prosecution after a jury acquitted plaintiff of the harassment charge.  Nevertheless, this is not enough to constitute initiation or continuation because the statements came after the grand larceny charge and there is no evidence that the Mayor withheld information pertaining to the charge's merit.

Moreover, plaintiff has demonstrated that Daniels made a statement to a Lieutenant Williams regarding plaintiff's possession of the gas card.  However, this is not enough to constitute initiation because one who merely discloses to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceedings.  See Present v. Avon Prods., 253 A.D.2d 183, 189 (N.Y. App. Div. 1st Dep't 1999).

Therefore, defendants' motions for summary judgment on plaintiff's malicious prosecution claim as it relates to the grand larceny prosecution will be granted.

### 2. Harassment Prosecution

The only evidence plaintiff proffers in support of his claim that the Mayor and Doyle initiated the harassment charge are police reports and testimony given by them.  However, the mere reporting of an incident to police and giving testimony does not sufficiently support the first element of malicious prosecution.  See Rohman, 215 F.3d at 217; Present, 253 A.D.2d at 189.  Furthermore, plaintiff has not shown that the Mayor or Doyle had an active role in the prosecution, furnished information in bad faith, or withheld information pertaining to the merit of the harassment charge.

The undisputed facts demonstrate that Amerosa arrested Tanoury, and thereby initiated the harassment prosecution.  However, Amerosa arrested Tanoury after receiving criminal complaints concerning his activities and personally observing him slowly driving past the Mayor's home.  Thus, probable cause was present because the information provided to

Amerosa in conjunction with his personal observations would warrant a prudent person of reasonable caution in believing Tanoury was committing an offense.

In his police statement, Daniels set forth the threatening statement plaintiff allegedly made after his termination. Plaintiff, however, rebuts having made a statement of any such color. As previously stated, Daniels's police statement in conjunction with Amerosa's personal observations stimulated plaintiff's arrest. Since plaintiff's version must be accepted as true on this motion for summary judgment, a question of fact arises with respect to whether Daniels, in bad faith, furnished false information to police. Therefore, there is also a question of fact as to whether Daniels initiated the prosecution without probable cause. Moreover, in New York State, lack of probable cause and malice are considered closely related elements, and the existence of malice may be inferred from a lack of probable cause. See Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). Accordingly, there are questions of fact pertaining to the presence of probable cause and malice.

Lastly, the harassment prosecution terminated in plaintiff's favor, because a jury acquitted plaintiff of the charge, and he suffered post-arraignment liberty restraints by having to attend trial and abide by the protection order.

Therefore, City defendants' motion for summary judgment on plaintiff's malicious prosecution cause of action against Daniels with respect to the harassment prosecution will be denied. However, defendants' motions for summary judgment on plaintiff's malicious prosecution claim will otherwise be granted.

C. **False Arrest Claim**[6]

Defendants move for summary judgment on plaintiff's false arrest claim on the ground that Amerosa had probable cause to arrest plaintiff and the remaining defendants did not intend to confine him.

As stated above, the Fourth Amendment protects citizens against unreasonable seizures, see U.S. Const. amend. IV, and § 1983 provides a private right of action to citizens who have been deprived of their Fourth Amendment rights by a person acting under color of state authority, see 42 U.S.C.A. §1983. Therefore, a person may bring a false arrest claim under § 1983 in federal court if their constitutional right to be secure in their person from unreasonable seizures has been violated by a state actor.

Under both federal and state law, the elements of a false arrest claim are: (1) the defendant(s) intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; (4) the confinement was not otherwise privileged. Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996); Broughton v. State of New York, 37 N.Y.2d 451, 456 (1975). Under both federal and state law, the existence of probable cause renders a confinement privileged. See Weyant, 101 F.3d at 853; Broughton, 37 N.Y.2d at 456.

With respect to the first element of a false arrest claim, intent to confine is not established merely upon showing that a defendant's words or actions caused a police officer to confine the plaintiff, Berrios v. Our Lady of Mercy Med. Ctr., 20 A.D.3d 361, 362 (N.Y. App.

---

[6] As with plaintiff's malicious prosecution claim, the legal standard for recovery on a false arrest claim under New York law is the same as the federal standard. Therefore, even though the ensuing discussion is in terms of federal law, it applies equally to plaintiff's false arrest claim under New York law.

Div. 1st Dep't 2005); rather a plaintiff must show that the defendant directed the officer to take the plaintiff into custody or otherwise affirmatively instigated the arrest. <u>Du Chateau v. Metro-North Commuter R.R. Co.</u>, 253 A.D.2d 128, 132-33 (N.Y. App. Div. 1st Dep't 1999); <u>Mesiti v. Wegman</u>, 307 A.D.2d 340 (N.Y. App. Div. 2d Dep't 2003). Put another way, "[t]he defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting on his own volition." <u>Mesiti</u>, 307 A.D.2d at 340 (internal quotation marks omitted).

Regarding the fourth element of a false arrest claim, as stated above, probable cause exists "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991).

In this case, Doyle did not file a harassment complaint, he did not furnish information to the police prior to Tanoury's arrest, nor was he aware of the arrest until the day after it occurred. Daniels filed an incident report outlining the events surrounding Tanoury's termination. The Mayor merely notified the police of Tanoury's activities and accepted police surveillance of his home. Thus, Tanoury has failed to produce evidence showing that these defendants directed Amerosa to arrest him or acted with undue zeal by affirmatively instigating the arrest. <u>See</u> <u>Du Chateau</u>, 253 A.D.2d at 132-33; <u>Mesiti</u>, 307 A.D.2d at 340.

With respect to Amerosa, City defendants argue that he had probable cause to arrest plaintiff. Amerosa received information from his captain and the Mayor describing plaintiff, his vehicle, the prior threatening statements, and his activity that day; and he

personally observed plaintiff driving slowly past the Mayor's home.  Thus, Amerosa had

knowledge and reasonably trustworthy information about facts and circumstances sufficient

to warrant a person of reasonable caution to believe that plaintiff was committing a crime.

Therefore, defendants' motions for summary judgment on plaintiff's false arrest

claim will be granted.

### D.  Procedural Due Process Claim

Defendants move for summary judgment on plaintiff's procedural due process claim

on the ground that they did not publicize defamatory statements concerning plaintiff, his job

performance, or the reasons for his termination.

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . .

deprive any person of life, liberty, or property, without due process of law."  U.S. Const.

amend. XIV, § 1.  From this provision arises the constitutional doctrine of procedural due

process.  The fundamental requirement of procedural due process is the "the opportunity to

be heard 'at a meaningful time and in a meaningful manner.'"  Mathews v. Eldridge, 424 U.S.

319, 333, 96 S. Ct. 893, 902 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.

Ct. 1187, 1191 (1965).  However, the first step in a procedural due process analysis is to

determine whether the plaintiff was deprived of a protected interest.  "Property interests, of

course, are not created by the Constitution.  Rather, they are created and their dimensions

are defined by existing rules or understandings that stem from an independent source such

as state law-rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits."  Bd. or Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92

S. Ct. 2701, 2709 (1972).

A person may bring a procedural due process claim in federal court under § 1983 if deprived of a protected interest without due process of law by a person acting under color of state authority.  See 42 U.S.C.A. § 1983.

It is well-settled that an at-will employee has no constitutionally protected property interest in continued employment and may be terminated for any reason or no reason at all. Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608-09 (2d Cir. 1983).  Moreover, defamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause.  Paul v. Davis, 424 U.S. 693, 702, 706, 709, 96 S. Ct. 1155, 1161, 1163, 1164 (1976).  However, "[a]n individual's constitutionally protected liberty interest is implicated when the government, in terminating a person's employment, imposes upon such person a stigma which restricts its ability to obtain future employment."  Brandt v. Bd. of Co-op. Educ. Servs., 845 F.2d 416, 417 (2d Cir. 1988) (citing Bd. of Regents, 408 U.S. at 573-74, 92 S. Ct. at 2707).  Claims in this context are commonly referred to as "stigma-plus" claims.  See Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006).

To prove a stigma-plus claim, a plaintiff must demonstrate, among other things, that the alleged offending governmental entity publicly disseminated defamatory statements related to the plaintiff's job performance or dismissal.  See Segal, 459 F.3d at 212.  If a defendant makes such statements in the absence of a name-clearing hearing, then a plaintiff has been deprived of a liberty interest without the due process of law.  See id.

In this case, the only activities of Doyle and Daniels which could give rise to a stigma-plus claim pertain to their police statements which outlined the events surrounding Tanoury's termination.  Tanoury, however, has not presented evidence supporting an

inference that either defendant publicly disseminated the contents of their statements, or that their statements related to Tanoury's his job performance or reasons for his termination. Thus, there is insufficient evidence to support a stigma-plus claim with respect to Doyle and Daniels.

The Mayor made public statements to the effect that he would press on with the grand larceny charge. However, the Mayor's statement did not relate to plaintiff's employment or termination. Instead, it pertained to plaintiff's acts as a private citizen, public information, and its substance was not of a defamatory color. Furthermore, plaintiff has not shown that the Mayor publicized his police reports. Thus, plaintiff has failed to support a stigma-plus claim with regards to the Mayor.

Finally, there are no allegations or evidence in the record demonstrating that Amerosa made any stigmatizing statements about plaintiff.

Therefore, defendants' motions for summary judgment on plaintiff's procedural due process cause of action will be granted.

### E.  First Amendment Retaliation Claim

 Defendants move for summary judgment on plaintiff's First Amendment retaliation claim on the ground that his June 16, 2004, statements did not constitute protected speech or motivate Tanoury's termination. Alternatively, URA defendants move on the ground that they are entitled to qualified immunity.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Under § 1983, a citizen can bring a private cause of action in federal court if a person acting under color of state authority retaliates against him for engaging in protected speech. 42 U.S.C.A. § 1983.

To succeed on a First Amendment retaliation claim, a plaintiff must establish that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a casual connection exists between his speech and the adverse employment determination" such that the speech was a motivating factor in the termination decision.  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999).  "Even if the plaintiff demonstrates these factors, the defendant can still prevail on a motion for summary judgment if it can show it would have taken the same adverse employment action even in the absence of the protected conduct."  See Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 251-52 (2d Cir. 2006) (internal quotation marks omitted).

The speech of a public employee is not constitutionally protected unless the speech involves a matter of public concern.  Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1648, 1690 (1983); see Pickering v. Bd. of Educ., 391 U.S. 563, 574, 88 S. Ct. 1731, 1737 (1968).  Whether speech involves a matter of public concern is an issue of law for the court to decide, and "must be determined by the content, form, and context of the given statement."  Connick, 461 U.S. at 147-48, 103 S. Ct. at 1690.  "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest", the employee does not engage in protected speech.  Id. at 147, 103 S. Ct. at 1690.

"Causation can be established either indirectly by means of circumstantial evidence, for example by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Morris, 196 F.3d at 110; see Cioffi v. Averill Park Cent. Sch. Dist. Bd., 444 F.3d 158, 168 (2d Cir. 2006) (plaintiff may establish causation indirectly by showing his speech was closely followed in time by an adverse employment action).  Evidence of a causal connection must sufficiently warrant an

inference that the protected speech substantially motivated the adverse employment action. Morris, 196 F.3d at 110.

In this case, Tanoury alleges that he was terminated in retaliation for his reference to the Mayor's secretary as his mistress on June 16, 2004. While the content of his statement, assuming its truth, may be of some concern to the people of Utica, the context in which it was uttered supports the conclusion that he was not speaking as a citizen on a matter of public concern. The fact that Tanoury made the statement while introducing his girlfriend to the Mayor's secretary at a local eatery indicates that he made the statement in jest, or perhaps in spite, but not as a concerned citizen. Thus, this utterance does not constitute protected speech and cannot support a First Amendment retaliation claim.

Additionally, Tanoury alleges that he was terminated in retaliation for his disclosure of city pay raises to a newspaper reporter. The salaries and pay raises given to public officials is of great importance to the taxpayers of a given community. Moreover, the fact that Tanoury made this statement to a newspaper reporter indicates that he was speaking as a citizen on a matter of public concern. Because both the content and context of that speech suggest that it was related to a matter of public concern, it is protected speech under First Amendment retaliation law.

The Mayor contends that he did not have any involvement in Tanoury's termination. In their depositions, Doyle and the Mayor claim that only Doyle made the termination decision and informed the Mayor thereof, on June 16, 2004. However, Tanoury alleges that after repeated inquires as to whether his job performance caused the termination, Doyle pointed to the Mayor's office and stated, "it never does, does it?" (Pl. Aff. ¶ 18.) Doyle does not rebut or even respond to these allegations.

Furthermore, the evidence shows that plaintiff made the pay raise disclosure on June 16, 2004, the Observer-Dispatch published an article divulging the city pay raises on June 17, 2004, the Mayor and Doyle read the article on its published date, and on June 18, 2004, Tanoury was terminated without cause.  Upon these facts, a reasonable jury could conclude that Doyle and/or the Mayor terminated Tanoury because of his disclosure.

In his deposition, Doyle stated that plaintiff did not follow directions or the chain of command, (Doyle Dep. at 20-24); however Doyle never states that these were the reasons for plaintiff's termination.  Therefore, Doyle has not shown that the same adverse employment action would have been taken, even in the absence of the protected conduct.

Moreover, plaintiff has produced no evidence that Amerosa and Daniels played any role in the decision to terminate him.

Therefore, defendants' motions for summary judgement on plaintiff's First Amendment retaliation claim against the Mayor and Doyle will be denied.  Conversely, defendants' motions for summary judgment on the First Amendment retaliation claim against Amerosa and Daniels will be granted.

### 1. <u>Qualified Immunity</u>

Alternatively, URA defendants contend that they should be granted qualified immunity on the grounds that an objectively reasonable individual, in light of clearly established law and the circumstances confronted, would not believe that firing Tanoury violated his rights.

"[Q]ualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Kerman</u>

v. City of New York, 374 F.3d 93, 108 (2d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  An official's liability depends on the objective reasonableness of their actions, which is considered in light of clearly established law and the circumstances confronted.  See Saucier v. Katz, 533 U.S. 194, 199-200, 121 S. Ct. 2151, 2155 (2001).  A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right."  Id. at 202, 121 S. Ct. at 2156.

Assuming that plaintiff has established that his statements were constitutionally protected and the motivating factors for his termination, Doyle contends an objectively reasonable individual, in light of clearly established law and the circumstances confronted, would believe that the termination did not violate his First Amendment rights.  Essentially, Doyle claims that an objectively reasonable individual would reasonably believe firing an at-will employee for exercising his constitutionally protected First Amendment right would not violate the employee's rights.  However, it is clearly established that firing an employee for engaging in protected speech contravenes that individual's rights.  See Connick, 461 U.S. at 146, 103 S. Ct at 1690.  Therefore, it cannot be said that an objectively reasonable individual would believe terminating plaintiff for engaging in constitutionally protected speech would not violate his rights.

As a result, URA defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim on the ground that Doyle is entitled to qualified immunity will be denied.

**F. Conspiracy Claims**

Defendants move for summary judgment on plaintiff's § 1985 conspiracy claims on the ground that they never entered into a conspiratorial agreement with respect to any of Tanoury's federal causes of action.

To succeed on a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must establish "(1) an agreement between two or more state actors or between a state actor and private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]onspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence." Rouseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994). Thus, conspiracies can be established through circumstantial evidence. Id.

Since plaintiff cannot sustain a claim for false arrest and procedural due process, and has produced no evidence, circumstantial or otherwise, showing an agreement between two defendants with respect to the malicious prosecution claim, he may not maintain § 1985 conspiracy claims with respect to those substantive claims.

Plaintiff has shown that the Mayor and Doyle are potentially liable for the First Amendment retaliation claim. It is undisputed that the Mayor and Doyle discussed Tanoury's termination on the day of the pay raise disclosure; read the article divulging the city pay raises on June 17, 2004; and Tanoury's termination occurred one day later. Additionally, the evidence reveals that the Mayor is Chairman of the Board of Directors of the URA which is Doyle's superior entity, wielded influence over URA employment activities, and recommended Tanoury for employment. Thus, plaintiff has presented circumstantial

evidence raising an issue of fact with respect to whether the Mayor and Doyle entered a conspiratorial agreement to terminate him.

Therefore, defendants' motions for summary judgment on plaintiff's § 1985 claim against the Mayor and Doyle as it relates to the First Amendment retaliation claim will be denied. Defendants' motions for summary judgment on plaintiff's § 1985 claims will otherwise be granted.

### G. State Claims

Defendants move for summary judgment on plaintiff's claims for defamation, battery, and intentional infliction of emotional distress.

Each of these claims will be addressed in turn.

### 1. Defamation

Defendants move for summary judgment on Tanoury's defamation claim on the ground that they did not publicize defamatory statements. This claim pertains only to Daniels, Doyle, and Julian, as Tanoury only alleges that they uttered defamatory statements.

To establish a claim for defamation, a plaintiff must demonstrate that the defendant made and published, without privilege, a false statement concerning the plaintiff, thereby causing damage to the plaintiff's reputation or constituting defamation per se. Dillon v. City of New York, 261 A.D.2d 34, 38 (N.Y. App. Div. 1st Dep't 1999). A qualified privilege extends to reports to the police or a district attorney's office about another's suspected crime. See Present, 253 A.D.2d at 187-88. A plaintiff, however, can trump qualified privilege with sufficient evidence showing that the defendant spoke with malice. Id. at 188. Malice requires a showing that the defamatory statement is made with knowledge that it is false or with reckless disregard as to whether it is false. Id.

- 21 -

Plaintiff has shown that Doyle and Daniels gave police statements setting forth his alleged threatening statement.  Plaintiff, however, rebuts making a statement of any such color.  This is enough to overcome Doyle and Daniels' assertion of qualified privilege because it raises a question of fact as to whether plaintiff ever made these threatening statements, and thus whether Doyle and Daniels' statements were given with malice.

The undisputed facts show that the Mayor filed a criminal complaint regarding Tanoury's alleged harassing behavior, and publicly stated that he would press on with the grand larceny prosecution.  The Mayor's public statement, however, is not of a defamatory color and does not constitute a false statement damaging to Tanoury's reputation.  See Dillion, 261 A.D.2d at 38.  Furthermore, since Tanoury has not contradicted the Mayor's evidentiary showing that he drove past the Mayor's home several times, he has not shown that the Mayor made any false statements.

Therefore, defendants' motions for summary judgment on plaintiff's defamation claim against Daniels and Doyle will be denied.  However, defendants' motions for summary judgment on that claim will otherwise be granted.

### 2. Battery

There is no factual basis to impose liability for battery upon any defendant other than Amerosa.  City defendants move for summary judgment on plaintiff's battery claim on the ground that Amerosa's use of handcuffs and leg restraints to transport plaintiff was reasonable.

In this case, as previously discussed, Amerosa had probable cause to arrest Tanoury.  See Brown, 297 A.D.2d at 210.  After arresting Tanoury, Amerosa placed him in handcuffs

and leg restraints before transporting him to the police station.  Amerosa's use of restraints in this case was reasonable.

Therefore, defendants' motions for summary judgment on plaintiff's battery claim will be granted.

### 3. <u>Intentional Infliction of Emotional Distress</u>

Defendants move for summary judgment on plaintiff's intentional infliction of emotional distress claim on the grounds that their conduct was not extreme and outrageous.

To succeed on a cause of action for intentional infliction of emotional distress, a plaintiff must establish "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress."  <u>Howell v. N.Y. Post Co.</u>, 81 N.Y.2d 115, 121 (1993).

Whether conduct is extreme or outrageous is, in the first instance, an issue for the court to decide.  <u>Rocco v. Town of Smithtown</u>, 229 A.D.2d 1034, 1035 (N.Y. App. Div. 4th Dep't 1996).  Liability is found where the conduct complained of is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Howell</u>, 81 N.Y.2d at 122.  "Consequently, the requirements of the rule are rigorous, and difficult to satisfy."  <u>Id.</u> (internal quotation marks omitted).

In this case, the only conduct that could possibly be construed as being so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,"

<u>Howell</u>, 81 N.Y.2d at 122, is Daniels conduct in giving an allegedly false police statement. That is insufficient to meet the rigorous standard.

Therefore, defendants' motions for summary judgment on plaintiff's claim of intentional infliction of emotional distress will be granted.

## IV.  <u>CONCLUSION</u>

With respect to the malicious prosecution claim, plaintiff has not shown that any defendant initiated the grand larceny prosecution.  Plaintiff also has not shown that the Mayor, Doyle, or Amerosa initiated the harassment charges.  However, an issue of fact has been raised regarding whether Daniels maliciously prosecuted plaintiff for harassment. Regarding the false arrest claim, plaintiff has failed to demonstrate that the Mayor Doyle, and Daniels instigated or requested his arrest, or that Amerosa lacked probable cause to arrest him.  There is no evidence showing that defendants violated plaintiff's right to procedural due process by publicly disseminating defamatory statements about plaintiff's job performance or termination.  With respect to his First Amendment retaliation claim, plaintiff has presented circumstantial evidence giving rise to an inference that the Mayor and Doyle conspired to terminate his employment because of his pay raise disclosure to the Observer-Dispatch. Also, plaintiff has raised an issue of fact as to whether Daniels and Doyle provided false police statements in bad faith, and therefore made defamatory statements.  Finally, Amerosa's use of handcuffs and leg restraints were reasonable, and plaintiff has failed to raise an issue of fact as to whether he was subjected to the intentional infliction of emotional distress.

There is no evidence that the URA or the City had a policy or practice or lack of training that contributed to any violation of plaintiff's federal rights.  Therefore, all federal

claims against them will be dismissed.  They remain as defendants in the two state claims (malicious prosecution and defamation).

Accordingly, it is

ORDERED that

1.  All claims against defendant Joseph Amerosa are DISMISSED;

2.  All claims for false arrest (federal and state), procedural due process (federal), battery (state), and intentional infliction of emotional distress (state) are DISMISSED;

3.  All claims for malicious prosecution (federal and state) are DISMISSED except as against defendants John Daniels and City of Utica regarding the harassment prosecution;

4.  All claims for First Amendment retaliation (federal) and conspiracy (federal) are DISMISSED except as against defendants Timothy Julian and Timothy Doyle;

5.  The defamation claim (state) is DISMISSED except as against defendants Timothy Doyle, Urban Renewal Agency, John Daniels, and City of Utica;

6.  All federal claims against the defendants Urban Renewal Agency and City of Utica are DISMISSED; and

7.  The following claims remain for trial:

a.  First Amendment retaliation (federal) and conspiracy (federal) against defendants Timothy Julian and Timothy Doyle;

b.  malicious prosecution against defendants John Daniels (federal and state) and City of Utica (state) regarding the harassment prosecution; and

c.  defamation (state) against John Daniels, City of Utica, Timothy Doyle, and

Urban Renewal Agency.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  August 15, 2007
        Utica, New York.